# The National Line Steamship Company *versus* Smart.

1. After goods have been delivered by a common carrier at its depot, the owner or consignee has a reasonable time within which to remove them, during which the liability of the carrier as an insurer continues. But after the expiration of such reasonable time, the liability of the carrier becomes modified, and it is only bound to exercise ordinary care to secure the safety of the goods. The liability is that of a bailee for hire, and grows out of the original contract.

2. If, after the liability of a carrier as an insurer ceases, goods of a consignee in its possession are destroyed or damaged, the carrier is only liable in case the loss occurred by reason of its negligence, which is a question of fact which must be proven to the satisfaction of the jury, the burden of proof being upon the party seeking to recover.

October 31st, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J. absent.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county:* Of October and November Term, 1884, No. 112.

This was an action on the case by William F. D. Smart against the National Line Steamship Company, to recover the value of baggage transported by the defendant company from Liverpool to New York, and destroyed by the burning of the pier upon which the goods had been landed.

The declaration contained two counts, the first of which averred that the defendants as common carriers were put in possession of the plaintiff's personal baggage, to be carried by defendants from Liverpool to New York, for hire, to be delivered to the plaintiff at the latter port, and that defendants, not regarding their duty in that behalf, did not deliver said goods to the plaintiff, but so negligently conducted themselves that said goods became and were destroyed, and wholly lost to the plaintiff. The second count was precisely similar to the first, except that there was no averment of the destruction of the goods, but it was simply alleged that the goods were wholly lost to the plaintiff. Plea not guilty.

The case was removed to the Circuit Court of the United States, but was by that court remanded to the Common Pleas. Another action, similar to this, brought by Elizabeth Smart against the same defendant, was tried at the same time with this case.

On the trial, before BAILEY, J., the facts appeared as follows:—The plaintiff was a cabin passenger on the defendants' steamship "Egypt," which sailed from Liverpool on January 18th, 1883, and arrived at New York on January 31st, at

about ten o clock, A. M.   The plaintiff's personal effects were contained in eleven cases, and as they exceeded in weight the free allowance for baggage, the plaintiff was charged and paid $20 for extra baggage.

On the arrival of the ship at New York the baggage of the passengers, including the plaintiff's, was discharged on the pier of the Inman Steamship Line which was adjacent to the pier of the National Steamship Line, at which the "Egypt" was unable to land as it was pre-occupied by other vessels. The plaintiff superintended the custom house officer's inspection of his baggage, on the pier.

Shortly before reaching the pier, the ship was boarded by E. R. Low, passenger agent of the defendant company, whose business it was, among other things, to inquire of passengers their destination, and in reply to his question the plaintiff said he intended to remain in New York, but as he had not decided where he should stay, he wanted his goods to remain, or, as plaintiff testified, "to be removed to the National pier for say a week, until he should find a place to take them to." At this point the testimony was conflicting.   The plaintiff testified that Mr. Low told him "they would have them moved up the same afternoon."   Mr. Low denied this, and said that after consulting with Mr. Andrews, defendants' superintendent, he told plaintiff the baggage could remain on the pier at his (plaintiff's) risk.   Nothing was said about compensation for permitting the baggage to remain, but defendants' witnesses testified that the company did not receive compensation in such cases, the act being a mere accommodation to passengers. The baggage remained on the pier on which it was landed, (the Inman pier) and at about 2 o'clock A. M. the following day that pier caught fire, and notwithstanding the efforts of employees and firemen, it was burned with its contents, including the plaintiff's baggage.

Plaintiff submitted no evidence of negligence by defendants as to the fire.   The defendant adduced evidence to show that the fire occurred accidentally from a small boiler and steam engine located on the end of the pier; and also, that there was an adequate force of watchmen and clerks in charge of the pier.

The defendants submitted the following points:

1. That under the pleadings and evidence the plaintiff is not entitled to recover, and their verdict should be for the defendants.

2. If the court declines to charge as requested in the foregoing point, then the court is requested to charge: That if the jury find that the goods in question were discharged from the steamship and delivered to the plaintiff upon the pier or

wharf, and that the said goods were subsequently left upon the said pier, in the custody of defendants' employees, to await the convenience of plaintiff, and that the same were destroyed by fire, then the plaintiff is not entitled to recover.

3. If the court declines to charge the jury as requested in the foregoing points, then the court is requested to charge : That if plaintiff's goods were left in the custody of defendants' employees, without any contract or promise on plaintiff's part to pay for such custody, and were subsequently destroyed by fire, then the plaintiff cannot recover without proving, to the satisfaction of the jury, that the loss of the goods was occasioned by the gross carelessness of the defendants.

4. That, under the facts appearing in and by the evidence of both parties, the defendants were not liable as common carriers, but, in the view most favorable to the plaintiff, as warehousemen ; and that as warehousemen, they are not liable for the loss of the goods by fire, unless the plantiff affirmatively proves, to the satisfaction of the jury, that the fire was occasioned by the neglect of the defendant.

5. That there is no evidence in the case which would warrant the jury in finding that the loss of the goods was occasioned by the fault of the defendants, and the verdict should be for the defendants.

6. That even if the jury think that the plaintiffs left their goods on the Inman pier, upon the promise of Low to have them removed that day to the pier of the defendants, a failure to cause them to be so removed would not of itself, be such an act of negligence as to make the defendants liable.

The court referred for answer to the above points to the general charge, which was as follows :

The defendant company, in the carriage of passengers, freight and baggage, is a common carrier, which means a carrier in common for everybody who needs its services. Upon such companies the law has imposed a liability excepting for the acts of God and the public enemy.

After the company had brought the plaintiff's baggage to New York and deposited it upon the wharf its liability did not necessarily cease, as a common carrier, and, though it retained the property afterwards, under some understanding between Mr. Low, representing the company and the plaintiff, it does not follow that its liability, to the extent imposed upon common carriers, continued. In my judgment it did not continue. The arrangement made between the parties was (as I understand it and so instruct you upon the law of the case) that while possession of this property was not taken by the plaintiffs in such a way as to relieve the company of

all care of it—not merely as common carrier but in any other aspect—that by an arrangement the custody was to continue in the defendant company for a short period of time, at the convenience of the plaintiffs, because for the reason stated they did not feel disposed at the time to take the goods into their actual custody. Therefore, I regard the relation subsisting between the property of these plaintiffs and the defendant company, as warehousemen ; not as common carriers.

The liability of a common carrier I have stated. The liability of a warehouseman is very different and very much less. I do not consider the defendant, in the care of that property as bailees without compensation. As I have stated I do not consider that the property was delivered to the plaintiffs in such a way as to relieve the defendant, at any point of time, from the care of it, and therefore I regard the relation that subsisted afterwards as being accessory to the carriage, and in a degree, at least, compensated for by the passage money and by the additional price which was paid, some $20, for extra baggage.

The liability of this company as warehousemen (and such I instruct you they were, for the purpose of this case) was that of ordinary care—a liability for negligence, the absence or failure to give such care to the property as an ordinarily prudent man would give to it under the circumstances. Not an extraordinary degree of care nor a very slight degree, but such care as an ordinarily prudent man would give to his own property under the circumstances—dependent upon the circumstances, upon the surroundings; because that care might be greater under one state of facts than under another. Apparently there was nothing in this case to provoke any undue care or more than the ordinary care of a prudent man. It was a deposit upon a sufficient wharf in the city of New York at a customary place for the deposit of baggage and freight remaining there under cover, in the care and under the supervision of a number of watchmen and other employees.

A discrepancy exists between the parties as to their memory of the contract or agreement, or statement that this baggage would be transferred from the Inman wharf to the dock of the defendant company, and also that the property would be, if left in the mode stated by the plaintiffs, at the risk of the owner. I think the law in relation to that has been very correctly stated by Mr. Shiras, and do not think it material enough to take any time in discussing it further.

The counsel on the respective sides have each presented points which it may be well to dispose of at this time:  The

[Steamship Co. *v.* Smart.]

plaintiffs ask me to instruct you in their fourth point, as follows:

4. If, from the evidence in the case, the jury believe that the plaintiff made an arrangement with the defendants, through their agent, Mr. Low, that his goods should be taken from the wharf of the Inman Line, where they were landed, to the wharf of the defendants, and there warehoused for safe keeping and that the defendants had ample time that day so to do, and did not do so, and the loss arose therefrom, then the defendants were chargeable with negligence, and are liable for the value of the goods of the plaintiff not delivered to him.

Answer. For the reason that I will state presently I refuse that point.

On the other hand the defendants ask me to instruct you in its sixth point, as follows:

6. That even if the jury think that the plaintiffs left their goods on the Inman pier, upon the promise of Low to have them removed that day to the pier of the defendants, a failure to cause them to be so removed. would not, of itself, be such an act of negligence as to make the defendants liable.

A. That point I affirm. In my judgment, at most, it was but a breach of the arrangement, a breach of the contract if you choose, between the plaintiffs and the defendant company, and the mere failure in itself would not be negligence unless there is something about the surroundings which would indicate a want of care in not transferring. The leaving of the property upon the Inman pier was not, what is called in law the proximate cause of the loss if there be more than one. The proximate cause of this loss was, clearly, the fire. As Mr. Shiras has illustrated, the failure to comply with that arrangement on the part of the company might have been the saving of the goods if the fire had occurred upon the other pier instead of upon this.

We look only to the proximate cause, not to the remote cause, and the proximate cause was not the leaving of the property there, but the fire, and I instruct you that the leaving of it there was not of itself such an act of negligence as would make the defendant liable, and was not, in my judgment, negligence at all, in the legal meaning of the term. So that, I think, you can safely dismiss from your minds anything in relation to that conversation, whether the terms were used about risk or not, or what the arrangement was.

Then I have held the defendant company to the duty of explaining how this loss occurred, and to give us not merely the fact that the property was destroyed by fire. but the surroundings and circumstances under which it occurred, so that

the jury would have an opportunity of determining whether the fire or the loss was the result of want of care or proper prudence upon the part of the defendant. Not that they shall absolutely show you just how the fire occurred, because that might or might not be practicable, but the surroundings of the fire, as, in the absence of evidence of the loss by fire, by theft or otherwise, there would be nothing before us to show that it was not the act of the defendant, itself. It may have converted the property to its own use or it might have been negligent, and in that way be liable, notwithstanding the loss did occur from a casualty, which, properly explained and understood, would relieve it from responsibility. It has shown, possibly to your satisfaction, that the property was destroyed by fire upon the pier. The witness Smith stated that he had seen the property upon the pier immediately before the fire, that it had not been removed and that the pier and its contents were destroyed. So that you will probably be satisfied that the goods were lost upon that pier and that the loss was by fire. You then turn to the surroundings of the fire and ascertain whether there is evidence about it which indicates a want of proper care on the part of the defendant, producing that fire. Was it the result of negligence? Does it appear from all the surroundings? If it does not appear, the company is not liable for the loss that has occurred to the plaintiffs. It was one of the misfortunes such as we all suffer in this world. It does not follow because property is lost in the custody of somebody else that that somebody else is necessarily responsible for the value of the goods. It does not follow that where an accident occurs to one, that necessarily somebody is responsible for that accident. It must be determined by the circumstances. This defendant company would not be responsible unless the facts indicate that it were guilty of some negligence, the want of ordinary prudence and care which persons give to their property. If you should find that to be the state of facts and fail to find this want of prudence and care, this negligence, then your verdict would be for the defendant.

If you find otherwise then you come to the question of damages. . . .

The other points of the respective parties except as affirmed by what I have said, are refused.

Verdict for plaintiff for $2,156.33, and judgment thereon. The defendant took this writ of error, assigning for error the answers of the court to defendants' points, as contained in the charge. The assignments were numbered to correspond with the respective numbers of the defendants' points.

11 OUTERBRIDGE.—32

*George Shiras, Jr.,* for the plaintiff in error.—Under the pleadings there could be no recovery against the defendants as warehousemen ; the declaration charged them only as common carriers, and the judge, having ruled that the plaintiff failed to make out a case on that ground, should have affirmed the defendants' first point and have directed a verdict in their favor, instead of submitting a different question to the jury, viz.: the liability of defendants as warehousemen on the ground of negligence. The plaintiff, however, gave no evidence of negligence other than the alleged breach of an alleged agreement to remove the goods prior to the time when the fire occurred. The burden of proof to show negligence—gross negligence, we contend—was on the plaintiff. The judge ruled that the breach of agreement to remove, if there was an agreement and a breach, would not of itself constitute negligence, but left it vaguely to the jury to find negligence "in the surroundings," if they could. There was no evidence that defendants were bailees for hire, but on the contrary that if bailees they were gratuitous bailees, and the judge should have instructed the jury that in such case they were only liable for gross negligence. The judge erred in saying that the plaintiff's passage money and freight for extra baggage were legal considerations for a subsequent undertaking to permit the plaintiff's goods to remain on the pier. Defendants had a clear right to refuse such permission, because they did not receive compensation therefor. We submit that upon the completion of the voyage and landing of the goods, where the plaintiff took possession of them and superintended the custom house inspection, there was a complete delivery to the plaintiff.

*Jos. A. McDonald,* for the defendants in error.—The declaration charges, inter alia, that it was the duty of the carrier to deliver the baggage to the passenger, and avers the breach of that duty. A common carrier ceases to be liable for the baggage as a carrier only after the lapse of a reasonable time after its arrival at the place of destination ; from that time he holds the baggage under a modified liability, analagous to that of a warehouseman. His duty to exercise care over the property thus remaining in his hands, grows out of the original contract; he assumes the duty of keeping the property till called for ; he does not hold it as a mere gratuitous bailee; he is therefore bound to exercise ordinary care in keeping and preserving the property: Edwards on Bailments, sec. 90. The relation between the parties, springing out of the original contract, remained, but the extent of the liability, arising from that relation, varied in proportion to the extent

of the performance of the contract: Burnell v. The New York Central R. R. Co., 45 N. Y. 184; Matteson v. New York Central & Hudson River R. R. Co., 76 N. Y. 381.

A private carrier, or ordinary bailee for hire, in case of a non-delivery of goods intrusted to him is liable therefor in the absence of ordinary diligence, and the fact of a non-delivery is prima facie evidence of want of ordinary care, and throws the burden of proof on the bailee: Shenk v. The Phila. Steam Propeller Co., 60 Pa. St. 109; Verner v. Sweitzer, 8 Casey 208; Beckman v. Shouse, 5 Rawle 189; Clark v. Spence, 10 Watts 347.

Were it as contended for, a new undertaking, not accessory to and springing from the contract of carriage, the defendants would be still liable, and the contract, and breach of failure to re-deliver being shown, the burden of proof would be on them to show due diligence in the keeping or custody of the goods, or a loss of them notwithstanding such diligence: Edwards on Bailm., sec. 62, and cases cited. He is not regarded as a gratuitous bailee, though he receives nothing definitely charged for the storage, at the commencement or at the close of the transaction. The incidental facilitates or contributes to the principal business; the storage of the goods is not therefore a gratuitous service: In the matter of Webb and others, 8 Taunt. R. 443; White v. Humphrey, 11 Adolph & Ellis, N. S. 43; Cairns v. Robins, 8 Mees. & Wels. 258.

Mr. Justice TRUNKEY delivered the opinion of the court, November 10th, 1884.

The parties agree that compensation having been paid for extra weight, the goods were carried as passsengers' baggage and properly placed on the pier of the Inman Line in New York, and that they were examined in the plaintiff's presence by the officer of customs, after which, at the request of the plaintiff, the defendant promised to keep them until demanded. They differ as to some of the terms of the arrangement; one alleging that on the same day the defendants were to move the goods to the National Pier, and put them under lock and key, and that nothing was said about the risk; the other, that nothing was said about moving the goods, and that the permit to leave them was expressly at the plaintiff's risk. The jury were instructed that if they found the facts as alleged by the defendant, the law in relation thereto was correctly stated by the defendant's counsel.

Upon the facts as testified by the plaintiff, it is obvious that the defendants' responsibility as common carrier ended with the arrangement for keeping the goods until called for by the plaintiff, and thenceforth the liability of the defendant was

that of a bailee for hire. It was the same as if the passenger had not called for his baggage within a reasonable time. A passenger must be allowed a reasonable time after arrival of his baggage to call for and take it away, and during such time the carrier continues responsible according to the strict rule of law relating to common carriers. When the liability as carrier ceases he holds the baggage under a modified liability. His duty to exercise care over the property remaining in his hands grows out of the original contract, and he is therefore bound to exercise ordinary care in keeping and preserving it; the original contract, though modified in respect to the degree of liability assumed from a reasonable time after the arrival of the goods, being understood to contemplate a possible delay, and to cover the delivery: Edwards on Bailments, § 90; Hutchinson on Carriers, §§ 708, 712; Burnell v. New York Central R. Co., 45 N. Y. 184. Where the contract is to carry goods by sea from port to port, it is the duty of the consignee to receive the goods out of the ship or at the wharf. If they are not accepted by the consignee the carrier should put them in a place of safety; and when he has so done he is no longer liable on his contract of affreightment: Richardson v. Goddard, 23 How. 28. So, a passenger should call as soon as practicable for his baggage, but if he does not, the carrier is bound to care for it or send it to a fit storehouse.

The arrangement between the plaintiff and defendant must be considered in connection with their original contract. There was no actual delivery of the property to the plaintiff; on the contrary, the defendant promised to keep it at the instant when delivery might have been tendered. The learned judge of the Common Pleas rightly ruled that there was no such delivery as relieved the defendant from the care of the property, and that from the time of the promise the property remained in the defendant's keeping under a modified liability, as that of a warehouseman. Hence, the third assignment of error is not sustained. Nor is the first. The declaration, it is true, sets forth the contract of the defendant as a common carrier, and though it is not liable as an insurer of the goods, its modified liability grows out of that contract.

A common carrier is regarded as an insurer of the safety of the goods against all losses except such as may be caused by the acts of God or the public enemy; and exceptions may arise from the fault of the owner, or from some inherent defect in the goods, or upon an express contract that the carrier shall not be liable for loss from a specified cause. In all such cases the burden is upon the carrier to establish the fact which will bring his case within an exception to the rule. When the carrier has shown that the loss was occasioned by

a cause from the liability of which he is protected by law or by contract, it will not be presumed that his negligence contributed to the loss, but the presumption will be, in the absence of proof to establish his negligence, that the carrier has done his duty; and if it has been shown that the loss resulted from such cause, without also having shown that the carrier was negligent, the burden of proving his negligence devolves upon the plaintiff. This rule seems to be supported by a decided preponderance of authority: Hutchinson on Carriers, §§ 765–767. It has been established in New York and Pennsylvania, and considered as if applicable to the case of a bailee who receives goods to store for a compensation. Where a carrier, by contract, was exonerated from a loss by fire, he was held liable only as a bailee for hire; and it was decided that the bailor could not recover upon simple proof of the destruction of the goods by fire, he must go farther and show that the loss was caused by the negligence of the bailee: Lamb *v.* Camden & Amboy R. & Tr. Co., 46 N. Y. 271; Farnham *v.* Camden & Amboy R. Co., 55 Pa. St. 53. In the latter case it was said: " That where a bailee accounts for a loss in a way not to implicate himself in a charge of negligence, this is a sufficient defence, unless the plaintiff proves negligence."

The plaintiff contends that these and like cases are where the liability was limited by contract, and that the rule should not be extended. But such limitation was held to operate no further than to put the carrier in the place of a bailee for hire. There is no reason why the rule should not apply to all bailees who are only liable for the loss of goods when the loss is caused by their negligence, especially to carriers who may become subject to a modified liability after the termination of their strict liability as carriers.

The defendant prayed instruction : " That if the jury find that the goods in question were discharged from the steamship and delivered to the plaintiff on the pier or wharf, and that said goods were subsequently left upon said pier, in the custody of the defendant's employees to await the convenience of the plaintiff, and that the same were destroyed by fire, then the plaintiff is not entitled to recover." As already remarked we are of opinion that the testimony did not warrant a finding that the defendant was a gratuitous bailee, and therefore this prayer was properly refused.

In showing that the goods were destroyed by a fire which burned property of the defendant, as well as of the plaintiff, the defendant did not show circumstances that warranted a finding that the fire was caused by the defendant's negligence. Even if the circumstances in evidence were such as to leave it doubtful whether the fire was caused by the defendant's

negligence the plaintiff could not recover. The jury must find the fact of negligence from evidence, and if the proofs leave the question in doubt, the burden being upon the plaintiff, he has failed to establish his right. Hence the prayer for instruction ought to have been affirmed, namely, that the defendant is not liable for the loss of the goods by fire unless the plaintiff proves, to the satisfaction of the jury, that the fire was occasioned by the neglect of the defendant.

The plaintiff rested upon proof of a prima facie right. This was repelled by oral testimony which undoubtedly satisfied the jury that an accidental fire destroyed the pier and all the goods thereon including the plaintiff's; and if it did, there not being evidence that the fire was caused by the defendant's neglect, the verdict should have been for the defendant. But the fact was for the jury, and therefore the defendant's fifth point was properly refused.

> Judgment reversed and venire facias de novo awarded.

### SAME *versus* ELIZABETH SMART.

This cause was submitted with the preceding, and the prothonotary is directed to enter the same judgment as above.