Ferreira et al., Appellants, *v.* Wilson Borough.

Argued April 14, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Israel Krohn,* for appellant.

*Wayne E. Barber,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 11, 1942:
This is an appeal from the refusal of the court below to grant a new trial after the jury rendered a verdict in

favor of the defendant, in an action of trespass brought against the Borough of Wilson by Madelina Ferreira and Arthur Ferreira, her husband, to recover damages for injuries sustained by the wife-plaintiff while riding in an automobile on a borough highway and to recover the expenditures made by the husband as a result of those injuries. The negligence charged is failure upon the part of the Borough to exercise due care in the construction and maintenance of a combination foot crossing and drain leading from the north side to the south side of Washington Boulevard on the west side of the latter's intersection with Eighteenth Street in the defendant Borough. The wife-plaintiff was a passenger in the rear seat of a sedan which was driven by one Julius Farinhas westward on the Boulevard. The accident happened on February 12, 1939, in the late afternoon while it was still daylight. The weather was clear and the road was dry. The driver claimed that he was proceeding at a rate of 15 or 20 miles an hour and that as he got on the crossing the car "flopped and jogged" and Mrs. Ferreira screamed. The driver then applied the brakes and stopped the car. Mrs. Ferreira testified that she was thrown upon the floor and severely injured.

The basic issue was whether or not the crossing or drain had been properly or negligently constructed and maintained. The cross-way at this point was both a cross-walk and drain because it served as a passage for pedestrians and at the same time took care of surface water. It was a concrete crossing twelve or thirteen feet in width. The surface of the Boulevard and of Eighteenth Street was bituminous macadam. In order to carry the water, the crossing was concave throughout its length. The testimony of witnesses varied as to its depth. The husband-plaintiff said by actual measurement its depth was ten inches. Farinhas, the driver of the car, testified that his estimate of the depth was eight or nine inches. The defendant's witnesses estimated its depth to be two or three inches. The crossing was twenty-four

years old and had not been repaired or resurfaced for twenty years.

It is the contention of the appellant that neither the photographs of the crossing nor the plan produced by the defendant were of any assistance in determining the amount of this depression and that "the best proof whether or not this combination cross-walk and drain was constructed and maintained in a reasonably safe condition for travel or whether on the other hand it was constructed and maintained in a manner that would jolt passengers in an automobile, thereby causing possible injury, was its effect upon an automobile passing over it."

Appellant states that "this evidence was to show that a condition capable of causing injury existed, that defendant, therefore, had constructive knowledge of it and in order that the jury might determine under all the evidence whether the defendant exercised reasonable care or not." The trial judge refused such offers of proof as to the intersection's harmful potentialities. Plaintiffs also offered to prove by witnesses that in their opinion the crossing was a dangerous one. This evidence was rejected and rejections of these offers of proof constitutes the subject of several assignments of error. Plaintiffs' offers which were excluded by the court were as follows: Witness A: That he passed on this intersection frequently from 1930 to 1939, that there was a depression in the highway and that in going over this highway in his automobile he was jolted from his seat. Witness B: That he and a passenger were jolted (the passenger "off the seat") in crossing this point prior to February 12, 1939; that the condition of the intersection on February 12, 1939, was the same as it existed for some time prior thereto and that in his opinion the crossing presents a dangerous condition. Witness: That in passing over the intersection at times prior to February 12, 1939, his machine was jolted and that the condition there is a dangerous one. Witnesses D and E: That the condition at the intersection was unsafe and dangerous on or about February 12, 1939.

These offers were properly excluded. The fact that an automobile was jolted in crossing a certain place in the street indicates little or nothing as to the condition of the street at that point until *all the conditions* which might have caused that jolt or contributed to it are first shown, such as the speed of the car, the degree of inflation of the tires, just what the driver did in respect to the steering wheel and the character and the condition of the springs in the car. If the excluded testimony as to the jolting had been admitted, it would have been competent for the defendant to show in rebuttal that the conditions of the car itself or the way it was handled caused or contributed to that jolting and to show further that other cars had passed over the same intersection without any jolting of their cars. All this would have raised many collateral issues.

The chief objection to the admission of testimony as to happenings of similar accidents at the same place is that the fact of accident may admit of being explained by other causes than the one sought to be established. In *Metropolitan Asylum District v. Hill*, 47 L. T. R. N. S. 29, Lord O'HAGAN speaking of an offer of evidence of the effects of other hospitals in spreading contagion said: "Without proof as to the state and management of the other hospitals, so as to establish a substantive similarity, any inference drawn from a comparison of their operation with that of the H. asylum might have been quite fallacious and deceptive. But, even without regard to this, . . . it would have involved the jury in a multitude of collateral inquiries, calculated to confuse and embarrass them, and it might have been endlessly prolonged by an indefinite multiplication of objects of comparison." In *Insurance Co. v. Tobin*, 32 Ohio St. 77, 90, the court in that case said in excluding evidence of previous instances of steamboat disasters occurring through snags, etc., that "it was calculated to create as many collateral issues as special cases of such loss introduced." In *Amoskeag Co. v. Head*, 59 N. H. 332, 337, Chief Jus-

tice Doe speaking for the Supreme Court of New Hampshire said in excluding evidence of sums paid for thirty-two other rights of flowage, as indicating value: "How far a trial can justly and reasonably go upon such [additional] issues is often a question of fact. The trial to which parties are entitled is not an endless one, nor one unreasonably protracted and exhausting. There may be a vast amount of evidence, relevant in a certain legal sense, but so unimportant, when compared with an abundance of better evidence easily available, as to be properly excluded." In *Mayhew v. Mining Co.*, 76 Me. 100, 113, the Supreme Court of Maine said: "One substantial ground for excluding evidence of collateral facts is that it is seldom that such identity in all essentials is found that a legitimate inference respecting the one case can be drawn from the other, and a host of collateral issues are brought in to distract the attention of the jury from the real point." In *Phillips v. Willow*, 70 Wis. 6, 9, 34 N. W. 731, Chief Justice Cole speaking for the Supreme Court of Wisconsin said, in excluding the fact that two other persons had collided with the stone by which the plaintiff's sleigh had been overturned: "[Courts have excluded this evidence] because such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and, moreover, because the adverse party, having had no notice of such a course of examination, is not presumably prepared to meet it. . . . It is apparent that if this testimony was relevant to prove a defect . . . , it would have been competent [in answer] to show that hundreds had passed over this highway in safety with carriages, notwithstanding the alleged defect. So issue after issue would be raised, and facts collateral to the main issue made by the pleadings would multiply; the main issue forming new ones, and the suit itself expanding like the banyan tree of India."

In *Diamond Rubber Company et al. v. Charles B. Harryman*, 92 Pac. 922, 15 L. R. A. (N. S.) 775, 780, the

Supreme Court of Colorado held that evidence that others had stumbled over an iron pipe (called a "goose neck") in the flagging of the sidewalk, about six inches from the curb, upon which the plaintiff had caught his foot is not admissible. The Court said: "If the fact that others had tripped upon the obstruction could be shown for the purpose of establishing negligence, then there would necessarily be as many distinct issues injected into the case as there were persons called as witnesses who had passed over the sidewalk in the vicinity of the goose neck. The care they had exercised and the conditions under which they had tripped upon the obstruction would be a subject of inquiry. If such evidence was admissible, then it would be proper to show that persons had passed along the sidewalk and had not tripped upon the obstruction; and again, the care they had exercised and the conditions under which they had passed by the goose neck could be gone into, and thus the case would be confused by a great number of collateral issues, which would not aid in determining whether or not the obstruction was dangerous. . . . The character of the obstruction was susceptible of proof. Such proof was made, and whether or not the goose neck was dangerous was to be determined by the jury from these facts, and not from whether others had passed along the sidewalk where it was located without being injured thereby, or had suffered an injury therefrom. That the testimony in question was not competent to prove negligence of the defendants is supported by many authorities, . . ." (citing them).

The application of rules of admissibility and competence of evidence is largely one of practical policy in the administration of the law. Thayer in his "Treatise on Evidence", page 536, says that the trial judge in exercising his function "must apply certain great principles", and among the eight principles Thayer enunciates is the following one: "The jury must not be obliged or permitted to listen to what will unduly delay the case, or

too much tend to confuse or mislead them." In *Reeve v. Dennett,* 145 Mass. 23, 11 N. E. 938, Justice HOLMES said that the objection "to the introduction of collateral issues [in a trial] is a purely practical one—a concession to the shortness of life."

The offer to prove that the condition described was dangerous was also properly excluded. When a condition can be described so clearly that a jury can determine as well as the witness whether the condition is a dangerous one, there is no warrant for the admission of opinion testimony on this point. In *Musick v. Latrobe Borough,* 184 Pa. 375, 384, 39 A. 226, this court said: "The general rule is well settled that the province of a witness is to state facts, and that of the jury is to draw conclusions from them. There are some exceptions to this rule, particularly when the facts are of such a character as to make it necessary, or at least helpful, that the jury be guided in drawing their conclusions by the testimony of persons possessing superior knowledge of the subject under investigation. . . . Witnesses have also been allowed to express opinions upon the safe or unsafe character of machinery, or of the condition of a highway, when an oral description by witnesses would not adequately present the situation to the jury. But if the defect or obstruction complained of is such as admits of a full and adequate description, the question whether it is dangerous or not is not a question of skill or art requiring the aid of expert testimony, but like other questions of fact is to be determined by the jury. They must learn the facts from the witnesses, and then draw their own conclusions as to the dangerous character of the highway, as well as to the contributory negligence of the traveler who suffers an injury." Wigmore on Evidence, 3rd ed., Vol. 7, p. 21, sec. 1923, says: "The only true criterion is: On *this subject* can a jury from *this person* receive appreciable help?"

In *Taylor v. Monroe,* 43 Conn. 36, 44, it was said: "The true test of the admissibility of such testimony is

not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter, but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the Court or jury in determining the questions at issue." In *New England Glass Co. v. Lovell*, 7 Cush. 321, Chief Justice SHAW said of the "experience" which qualifies witnesses to express an "expert opinion": [It must *not* be] "of such a nature that it may be presumed to be within the common experience of all men of common education moving in the ordinary walks of life."

The witnesses offered by plaintiffs in this case were lay witnesses. Wigmore, Ibid., sec. 1924, says of the opinions of lay, i. e., non-expert, witnesses: "Such a witness' inferences are inadmissible when the jury can be put into a position of equal vantage for drawing them,—in other words, when *by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion.*"

Complaint is also made that after plaintiff called an engineer to prove that in his opinion this combination of cross-walk and drain was not a common and accepted method of construction, the engineer was not permitted to state the factors on which his opinion was based. Further, after the borough engineer testified that the construction was of the common and approved method, plaintiffs' counsel was not permitted to cross-examine him as to the elements on which his conclusion was based. Plaintiffs' counsel say in their brief: "This limitation of the direct examination of plaintiff's expert witness and of the cross-examination by plaintiffs' counsel of defendant's expert witness constitutes the remaining reasons for this appeal."

As to the limitation complained of, the answer is that in such matters limitation on a trial judge is an

elastic one and his rulings will not constitute reversible error unless they are both *erroneous* and *substantially harmful.* See *Thompson v. American Steel & Wire Co.,* 317 Pa. 7, 175 A. 541. The record shows that these "expert witnesses", for the respective litigants were extensively examined and cross-examined. The members of the jury heard enough to enable them to appraise the weight to be given the experts' opposing conclusions. We find in the rulings cited as error no such manifest abuse of power as to call for a new trial.

When a litigant attempts to show, as did the plaintiffs here, that the thing complained of was "not a common and accepted method of construction", evidence supporting such an allegation must be considered in the light of this principle: "The substantive law tells what the *standard of conduct* for negligence is; and this standard is a fixed one, independent of the conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper. This conduct of others, then, (1) is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person in that situation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law. . . . [Such evidence must be received, but] "with an express caution that it is merely evidential and is not to serve as a legal standard." Wigmore on Evidence, 3rd ed., Vol. 2, p. 489, sec. 461. In *Texas & P. R. Co. v. Behymer,* 189 U. S. 468, 23 Sup. 622, Justice HOLMES said: "What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

The judgment is affirmed.