Moss, Appellant, *v.* Bailey Sales and Service, Inc.

548

Argued March 12, 1956. Before Stern, C. J., Jones, Bell, Musmanno and Arnold, JJ.

*Howard W. Lyon*, with him *Gilbert D. Levine* and *Donald E. Williams*, for appellants.

*Alvah M. Shumaker*, with him *Joseph R. McFate* and *Caldwell & McFate*, for appellee.

Opinion By Mr. Justice Jones, June 25, 1956:

This is an appeal by the plaintiff partnership from the refusal of the court below to take off a compulsory nonsuit entered at the trial of their action in assumpsit for the recovery of the value of a tractor which their employee had delivered to the defendant company for repair and which the defendant, upon due demand therefor, was unable to redeliver.

At trial, the evidence adduced in the plaintiffs' case established that the defendant company operated a service garage for trucks and that, in conjunction therewith, it maintained what is known as a "truck-stop" where the drivers of trucks in transit could rent cabins and obtain food during a layover. The size of the service garage was insufficient to admit of the storage therein of all of the trucks to be repaired. Hence, the practice was to keep within the garage only such trucks as were actually being worked upon. All other trucks were parked on a large adjacent lot of the defendant company which was also used for the parking of the vehicles of purely transient drivers who merely rented accommodations for themselves for the night. The trucks parked on the lot were left unattended. The keys to such trucks as had been repaired, together with a bill therefor, were tagged and kept during the daytime in the "parts room" of the garage and at night in the defendant's gasoline service station. The bill for repairs had to be approved by the driver's signature before the keys to his truck would be released. The arrangement with respect to the nighttime custody of the keys was for the convenience of drivers who might wish to depart in the early morning before the garage was open for business.

The driver of the tractor in suit left it (complete with a trailer for which no recovery is sought) for minor repairs at the defendant's garage. He had authority so to do and had dealt with the defendant company for some four to five years. He was familiar with the operation of the garage and the use of the conjoined parking lot as above described. He testified at trial that ordinarily he would request that the desired work on his truck be done "as soon as possible", but that he had no recollection whether he had so requested on the occasion here involved. In any

event, he did not actually request the redelivery of the tractor for three days. Nor could he recall whether he had stayed over night in one of the defendant's cabins during that period although the defendant's records showed that he had paid for the use of a cabin for each of the three nights. He further testified that he had, during his three-day layover, assisted on his route a fellow truck driver who was suffering from a back injury.

When the driver of the tractor in suit requested its return neither the keys for it, the bill for the work done on it nor the truck itself could be found anywhere on the defendant's premises. The driver thereupon notified the State police and the local authorities that the truck had been stolen. And, one of the plaintiffs testified at trial that the truck had been stolen; he also admitted in cross-examination that he had instituted suit in behalf of the partnership against their insurance carrier for the value of the truck on the allegation that it had been stolen.

At the conclusion of the plaintiffs' case, the learned trial judge entered the compulsory nonsuit on the ground that the testimony adduced by the plaintiffs showed that the truck was stolen and that, consequently, it devolved upon the plaintiffs to offer proof that the theft was the result of negligence on the part of the defendant; and no evidence to such effect was offered.

A bailor makes out a prima facie case against his bailee for hire for the recovery of the value of unreturned bailed property by showing his delivery of it to the bailee and the latter's failure to redeliver it upon the bailor's due demand therefor. It then becomes the bailee's duty, if he would escape responsibility for the loss of the bailed article, to show that

his failure to redeliver it upon the termination of the bailment was because of its loss by fire, theft or other casualty free from fault on his own part. With that done, the burden of going forward with evidence to prove that the loss was due to the bailee's negligence is then upon the bailor. The question that has most frequently arisen in the trial of such litigation is concerned with both the burden and the order of proof rather than with the law of bailments. See, e.g., *Schell v. Miller North Broad Storage Company*, 142 Pa. Superior Ct. 293, 16 A. 2d 680, where Judge (later Justice) PARKER discriminatingly reviewed at length a number of reported cases.

In the *Schell* case, supra, the rule was well stated substantially as follows—"when the bailor has proved a bailment, demand, and failure to deliver, it then becomes incumbent upon the bailee to go forward with proofs not necessarily showing that he used proper care in handling the bailment but merely showing 'by clear and satisfactory proof that the goods were lost, and the manner [in which] they were lost.' When the bailee has furnished such proofs . . . and [the] proofs do not disclose lack of due care on his part, then the bailor, if he would recover, must prove negligence on the part of the bailee and the bailee's negligence becomes the vital issue." In that case the plaintiff in his declaration averred the bailment, his demand for the bailed property and its destruction by fire, disclosing full knowledge of the cause of the loss and the manner of the fire. The defendant, in its affidavit of defense, admitted all of the averments of the plaintiff's declaration except the value of the goods and lack of care on its part. At trial, the plaintiff proved the bailment, his demand for the goods and the defendant's failure to return them by the admissions in the pleadings. The destruction of the goods by fire and their value were

proved otherwise by the plaintiff who made no attempt, however, to show negligence on the part of the defendant. The jury returned a verdict for the plaintiff on which judgment was entered. On appeal, the Superior Court reversed and entered judgment for the defendant. This order was subsequently changed to the grant of a new trial so that the plaintiff and others having claims growing out of the same fire might have an opportunity to present their cases in accordance with the procedural law as then enunciated in the *Schell* case. See *Yeo v. Miller North Broad Storage Company*, 146 Pa. Superior Ct. 408, 410, 23 A. 2d 79.

The provision in the bailment contract in the *Schell* case that the bailee was "not liable for loss or damage occasioned by . . . fire" had no bearing on the question as to the burden or the order of proving that the fire was due to negligence of the defendant. The exculpatory clause of the contract did not operate to relieve the bailee of liability for its own negligence. That was plainly recognized in the *Yeo* case, supra, which involved one of the claims growing out of the same fire as in the *Schell* case. In the *Yeo* case President Judge KELLER, in addition to quoting from the *Schell* case to the same effect as we have done hereinabove, said that,—"We may add that where the plaintiff's own case, whether by direct evidence or cross-examination, establishes that his goods were destroyed by a general fire in the bailee's premises, which also destroyed or seriously damaged the building in which they were stored, the plaintiff, if he would recover, must go ahead and prove negligence on the part of the bailee in the care and keeping of the goods that contributed to the fire."

When the *Schell* case again reached the Superior Court on an appeal from a judgment of compulsory nonsuit entered at a retrial, the Superior Court re-

versed on the ground that the evidence adduced by the bailor was sufficient to support a jury's finding that the cause of the loss was due to the bailee's negligence. However, in speaking for the court, Judge Reno expressly recognized, on the basis of the ruling in the earlier *Schell* case and in the *Yeo* case, that "The burden of proof rested upon [the bailor] which could be satisfied by showing, not only that he had stored his goods in [the bailee's] warehouse and that they had not been returned to him, but that they had been lost and destroyed by a fire which was due to [the bailee's] negligence." An allocatur having been granted in that case, we affirmed expressly on Judge Reno's opinion: 353 Pa. 319, 320, 45 A. 2d 53.

In *Anderson v. Murdoch Storage & Transfer Company, Inc.*, 371 Pa. 212, 216-217, 88 A. 2d 720, Mr. Justice Bell recognized for this court that "Since the [bailor] proved not only the storage of his goods and his demand for and [the bailee's] failure to return them, but also that the goods were destroyed by a fire which occurred without any negligence on the part of the [bailee], he cannot recover." See also *Toole v. Miller*, 375 Pa. 509, 512, 99 A. 2d 897.

The rule is, of course, no different where the loss of the bailed property is occasioned by theft rather than by a fire. The question of the bailee's liability for the loss depends upon whether the theft was the result of his negligence which it is incumbent upon the bailor to show once the theft is made to appear as the cause of the loss. Where, as in the present instance, the theft is established in the plaintiff's case and the plaintiff fails to prove culpable negligence on the part of the defendant, he has failed to make out his case. The learned court below therefore acted properly in entering the compulsory nonsuit which it later refused to remove.

The cases of *Atkins v. Racquet Garage Corporation*, 177 Pa. Superior Ct. 94, 110 A. 2d 767, and *Maloney v. Harless*, 177 Pa. Superior Ct. 303, 110 A. 2d 770, upon which the appellants largely rely, are not persuasive. In each of those cases, the court misapprehended, by way of dicta, the rule as to the order of proof where the explanation of a bailee's inability to redeliver bailed goods, such as its destruction by fire or other uninvited casualty, appears in the plaintiff-bailor's case. In such instance, if the bailor would impose liability on the bailee for the loss, it is incumbent upon him to offer evidence tending to prove that the fire or other invading casualty was the result of the bailee's negligence. In view of the scope of the proofs in the *Atkins* case at the close of the plaintiff's evidence, the Superior Court was mistaken when it said that "it was proper for the trial judge to refuse the motion for a complsory non-suit." The fact is that the lower court's refusal of the nonsuit was not the assignable error when the *Atkins* case reached the Superior Court. The question there involved was whether the trial judge had erred in overruling the defendant's point for a directed verdict at the conclusion of the evidence for both sides. What justified the judgment for the plaintiff in the *Atkins* case, which the Superior Court affirmed, was the fact that, after the trial judge had overruled the motion for a compulsory nonsuit, the defendant went ahead and proved facts from which it was reasonably inferable that the loss of the plaintiff's automobile by fire was due to the defendant's lack of ordinary care in the circumstances.

In the *Maloney* case the trial court entered judgment n.o.v. for the defendant-bailee because the evidence did not justify a finding that the destruction of the bailed property resulted from negligence of the

defendant. The Superior Court properly affirmed the judgment, but its opinion reiterated the mistaken dictum of the *Atkins* case. As this court long ago recognized,—"the [bailee] is not liable for the loss of the goods by fire unless the [bailor] proves, to the satisfaction of the jury, that the fire was occasioned by the neglect of the [bailee]": *The National Line Steamship Company v. Smart,* 107 Pa. 492, 502. Proof alone of loss by casualty does not establish the bailee's liability.

The rule in this State, as hereinabove set forth, is in accord with the weight of authority generally. See 6 Am. Jur., Bailments, §372, p. 462, where it is said that "The weight of authority appears to support the rule that no presumption or inference of a bailee's negligence arises as a matter of law from the mere fact that the property, while in his possession, was destroyed by fire or stolen . . . in the absence of other circumstances which would support some inference of negligence." The same digest further declares that "a bailor who makes out his prima facie case by showing delivery in good condition to the bailee and a return in damaged condition, or no return at all, destroys it by going further and showing the bare fact that the damage or loss was occasioned by such a specific cause as fire or theft, and the duty of showing negligence by proof remains upon him." To like effect, Corpus Juris Secundum states (Vol. 8, Bailments, §50, p. 348) that *"Where the bailor elects to allege or prove the circumstances of loss,* instead of resting his case merely on pleading or proof of delivery and failure to return, and where the bailee's negligence does not affirmatively appear from the evidence thus adduced by the bailor, there is no burden of proof resting on the bailee, but the bailor has the burden of

going forward with evidence which will affirmatively show the bailee's negligence."

We are not aware that the rule is otherwise, than as above stated, "in practically every other State of the Union" (than Pennsylvania) or that it is the "well-nigh universal rule". It is true that the more recent decisions of other jurisdictions, in an increasing number, hold that loss or injury of bailed property, as by fire, theft or like cause, while in the hands of the bailee, ordinarily raises a presumption of negligence casting upon the bailee the burden of proving his freedom from causal fault: 8 C.J.S., Bailments, §50 c (2), p. 342; Am. Jur., loc. cit. supra. But, if a bailee for hire in Pennsylvania is to be made an insurer of the property committed to his custody (which is the practical effect of the "modern" rule), it is preferable, in view of the long established cognate decisional law in this State, that such change be made by the legislature acting prospectively.

Order affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE HORACE STERN:

As I view the question here involved, the present decision and the majority opinion seeking to justify it are contrary to the law laid down in such cases in practically every other State of the Union, as cited in 8 C.J.S. pp. 343, 344, §50 c (2). Pennsylvania should ally itself with the other jurisdictions in adopting what is the only logical and practical rule that should govern in the trial of bailment cases.

The error here consists in confusing the ultimate *burden of proof* which rests throughout upon the bailor to prove that the loss of his property was due to the

negligence of the bailee, and the shifting of the burden of *going forward with the evidence* after the bailor has proved delivery to the bailee and the latter's failure to return the property on demand.

It is obvious why this well-nigh universal rule accords with the necessities of the situation. That the tractor in the present case was stolen was admitted by plaintiff in the presentation of his testimony, but how was he in a position to prove the precautions or lack of precautions adopted by defendant to protect the bailed property from such a theft? This proof lay solely within the knowledge of defendant, and the law always places the burden of showing the facts upon the party alone able, or best able, to explain them.

I therefore dissent.

Mr. Justice MUSMANNO concurs in this opinion.