126

Huck-Gerhardt Company, Inc. *v.* Kendall, Appellant.

Argued March 26, 1958; reargued June 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*W. Bradley Ward,* with him *Josephine H. Klein, William Kendall,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Wesley H. Caldwell,* with him *Lloyd A. Good, Jr.,* and *Roper & Caldwell,* for appellee.

OPINION BY WOODSIDE, J., March 18, 1959:

This is an appeal from a judgment entered for the plaintiff on a jury verdict after the court below had refused defendant's motions for judgment n.o.v. and for a new trial. The action was brought in assumpsit by a corporate bailor to recover the value of its goods delivered to a bailee for hire and not returned to the plaintiff upon demand. The plaintiff's goods were destroyed by fire which the jury found was caused by the defendant-bailee's negligence.

The plaintiff alleged in its complaint, and proved at the trial, that it had delivered catalogues and folders to the defendant, who for a consideration agreed to imprint upon them according to the plaintiff's instruction, and that notwithstanding its demands the defendant failed to return a certain specified number of them. The plaintiff offered two witnesses whose testimony was directed toward showing the quantity of the goods not returned and the nature of the relationship between the parties as a bailment for hire, issues which are not involved in this appeal.

On cross-examination of these witnesses, counsel for the defendant asked them whether they knew there had been a fire where the plaintiff's goods were stored, and they stated that they did. Subsequently on cross-examination, one witness testified that the plaintiff wanted to be reimbursed for that which was lost in the fire, and the other witness, when asked on cross-examination, "Did you visit that place (the defendant's buildings which burned) and examine your stock?" replied, "Oh, after the fire—the day after the fire, and subsequently about ten days later."

On the basis of this cross-examination the defendant moved for a compulsory nonsuit which the court properly refused.

In *Moss v. Bailey Sales & Service, Inc.*, 385 Pa. 547, 550, 551, 553, 123 A. 2d 425 (1956), Justice [now Chief Justice] JONES speaking for the Court said, "A bailor makes out a prima facie case against his bailee for hire for the recovery of the value of unreturned bailed property by showing his delivery of it to the bailee and the latter's failure to redeliver it upon the bailor's due demand therefor. It then becomes the bailee's duty, if he would escape responsibility for the loss of the bailed article, to show that his failure to redeliver it upon the termination of the bailment was because of its loss by fire, theft or other casualty free from fault on his own part. With that done, the burden of going forward with evidence to prove that the loss was due to the bailee's negligence is then upon the bailor . . .

"In Anderson v. Murdock Storage & Transfer Company, Inc., 371 Pa. 212, 216, 217, 88 A. 2d 720, Mr. Justice BELL recognized for this court that 'Since the [bailor] proved not only the storage of his goods and his demand for and [the bailee's] failure to return them, but also that the goods were destroyed by a fire which occurred without any negligence on the

part of the [bailee], he cannot recover.' See also Toole v. Miller, 375 Pa. 509, 512, 99 A. 2d 897."

Corpus Juris Secundum (Vol. 8, Bailments, §50, p. 348) states, that "Where the bailor elects to allege or prove the circumstances of loss, instead of resting his case merely on pleading or proof of delivery and failure to return, and where the bailee's negligence does not affirmatively appear from the evidence thus adduced by the bailor, there is no burden of proof resting on the bailee, but the bailor has the burden of going forward with evidence which will affirmatively show the bailee's negligence."

Here the plaintiff did not "elect to allege or prove the circumstances of the loss." It made no reference in its amended complaint to the fact that its goods were destroyed or damaged by fire, nor did its witnesses make reference to this fact in their direct examination. The defendant cannot avoid his legal duty "to show that his failure to redeliver [the goods] upon the determination of the bailment was because of its loss by fire . . . free from fault on his own part," by bringing out on cross-examination of the plaintiff's witnesses that they had knowledge of a fire which destroyed or damaged the goods in question.

After the refusal of the nonsuit, the defendant testified that the plaintiff's goods were destroyed by fire.

The evidence shows that the plaintiff's goods were stored in the defendant's two story brick "garage-like" 30′ by 30′ building located on Carlisle Street in Philadelphia. The building was used for storage of papers, and sometimes the defendant and his employe George Baldwin stored their cars in it. On the night of the fire, in April 1953, Baldwin walked in the front door of the building and upstairs. His automobile was in the building. He testified that the automobile

had no battery in it, the head was off of the engine, and that the gas gauge showed the tank empty. While moving goods stored on the second floor, some one in the street called Baldwin and said, "The place is on fire." Baldwin could not get down the stairs, and was forced to jump from the second story to the street.

After the defendant testified, the plaintiff called Lt. Wilmer Boardman of the Philadelphia Fire Marshal's Office. Most of the facts contained in the above paragraph were developed after Boardman testified, but as they are necessary to an understanding of Boardman's testimony we related them first. Boardman served 15 years with the Philadelphia Fire Department, 5 in the Fire Marshal's Office, and qualified as an expert.

He testified that he investigated the fire in which the plaintiff's goods were destroyed, and that in his opinion the fire originated in the motor of Baldwin's automobile as the result of a short circuit of an "undisconnected" battery igniting the gasoline in the car's fuel pump. He stated that the automobile was "totally burned, and the motor part of the vehicle was in a very bad state of burn," which indicated to him "that the fire originated around the automobile and spread to the rest of the building." He said that when he made his examination the day after the fire, the automobile had been pushed into the street and that the battery was in it.

Five times Boardman was asked, in slightly different language, by plaintiff's attorney whether the fire was caused by carelessness or whether it was a careless practice to store or overhaul a car in a garage where paper was stored. The trial judge sustained the defendant's objection to these questions until finally the trial judge himself asked the witness, "In your opinion was the fire caused by carelessness," to which

the witness replied, "It would be careless, a careless thing to do, to work in a paper warehouse."

On this point the trial judge charged the jury, "You have the testimony with reference to the fire and the opinion of the expert as to how this fire was started, and he said in his opinion it was due to carelessness."

The plaintiff's case rests upon the opinions of its expert witness, first as to the cause of the fire and second as to carelessness. There was insufficient evidence of negligence to sustain the verdict without the opinion evidence of Boardman.

The opinion of Boardman concerning carelessness requires examination. The answer he gave was not responsive to the leading question of whether the fire was caused by carelessness. Even though not specifically so stated, we think that from the questions and answers which preceded it, the jury could take his answer to be "Working on an automobile in a paper warehouse would be a careless thing to do." During his investigation Boardman said he had ascertained from some unnamed person that "Baldwin's car was being worked on" in the defendant's building, but the only evidence before the jury was that the car had not been worked on inside the building. For this reason alone the answer should have been stricken.

Working on a car in a building where paper is stored may or may not be careless depending upon a number of circumstances. There is no clear necessity for opinion evidence on this question, because descriptive language is adequate to convey to the jury the precise facts upon which it can apply its experience concerning the conduct of an ordinary prudent man.

It was error to permit the expert witness to give his opinion on whether it was carelessness to work on an automobile in a building where paper was stored,

or on whether this particular fire "was caused by carelessness."

In England opinion evidence is much more freely used than in America, and it may well be that our rule is too exclusive. VII Wigmore, Third Edition, §1917. Nevertheless, opinions that the conduct of the defendant was negligent or careless are admissible in Pennsylvania only in cases of clear necessity where mere descriptive language is inadequate to convey to the jury the precise facts. *Graham v. Pennsylvania Co.*, 139 Pa. 149, 21 A. 151 (1891); *Whitaker v. Campbell*, 187 Pa. 113, 41 A. 38 (1898).

Expert evidence as to the fact that the actual danger from fire to the plaintiff's house was rendered greater by the adjacent building has been held inadmissible. *Franklin Fire Ins. Co. v. Gruver*, 100 Pa. 266, 273 (1882). In *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 224, 189 A. 331 (1937), it was stated, "An expert cannot be permitted to testify whether or not a certain practice is a 'safe one' . . ." Nor can a plaintiff prove by an expert witness that steps upon which she slipped were improperly constructed, *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 64, 88 A. 2d 873 (1952) or that a drain crossing a highway was dangerous. *Ferreira v. Wilson Borough*, 344 Pa. 567, 568, 569, 26 A. 2d 342 (1942). See also *Commonwealth v. Greenberg*, 143 Pa. Superior Ct. 203, 216, 217, 17 A. 2d 698 (1941) and Pennsylvania Evidence by Henry, §567.

We have recently held that in exceptional cases, opinion evidence of experts is admissible on the question of the incendiary origin of a fire. *Commonwealth v. Nasuti*, 180 Pa. Superior Ct. 279, 283, 119 A. 2d 642 (1956). This holding was affirmed by the Supreme Court in whose opinion was the following: "Expert testimony is admissible in all cases, civil and criminal

alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience . . . In short, while in some arson cases the testimony may not need any supplementation by expert opinion, other such cases clearly justify its admission: 2 Wharton's Criminal Evidence (12th ed.), 341, §517. The present is such a case . . ." *Commonwealth v. Nasuti*, 385 Pa. 436, 443, 123 A. 2d 435 (1956). See also *Commonwealth v. Kaufman*, 182 Pa. Superior Ct. 197, 126 A. 2d 758 (1956) ; *Commonwealth v. Adams*, 187 Pa. Superior Ct. 611, 145 A. 2d 729 (1958).

The courts of this Commonwealth have shown a tendency in recent years to be more liberal in admitting opinion evidence, not only in criminal cases but also in civil cases, as for example in *Churbuck v. Union Railroad Co.*, 380 Pa. 181, 110 A. 2d 210 (1955).

Although we think it was error to permit the expert to give his opinion concerning "carelessness" in this case, we think he could give his opinion concerning the origin of the fire. The weight of this evidence was for the jury.

It is sometimes difficult to determine whether an expert's conclusions constitute an opinion or a guess. This has led courts to say that opinion evidence is among the least reliable of all forms of evidence, *Muenz v. Kelso Beach Imp. Association*, 181 Pa. Superior Ct. 105, 124 A. 2d 153 (1956). Although one experienced in fighting and investigating fires can see significant and unusual evidence not recognized by an inexperienced person, the truth is that very many fires consume the evidence of their cause, thus leaving such tenuous information that determination of their origin becomes a matter of speculation rather than deduction. An incendiary fire, or one "by design" as it is referred to throughout this case, has characteristics which dif-

fer from other fires. These distinguishing characteristics are easier to detect than are any characteristics
which would distinguish a fire caused by negligence
from one completely accidental.

Section 107 of the Fire Prevention Code of Philadelphia states: "The Fire Marshal shall investigate the
cause, origin, and circumstances of every fire occurring in the city, . . . and, so far as possible, shall determine whether the fire is the result of carelessness
or design."

It was in carrying out this provision that Boardman
made his investigation.

Reading Boardman's testimony leads one to the conclusion that he was a fair, impartial, and intelligent
witness. He pointed out that all fires are presumed
to be accidental and neither careless nor by design.
Nevertheless, throughout the case reference was made
so frequently to "carelessness *or* design" that the jury
could easily have been led to believe that fires are classified by the fire marshal into only two classes (those
caused by carelessness or design) instead of three
classes (those caused by accident, carelessness or design). The trial judge attempted to clarify this point
to the jury, but his final remark that "This matter
falls into the classification of carelessness," could have
led the jury to believe it was being told to find that
the defendant was negligent.

This, along with the absence in the charge of any
reference to proximate cause, the failure to define negligence, and an inaccurate reference to the burden of
proof, causes us to doubt that the issues were clearly
presented to the jury.

The trial judge charged, "Of course, Members of the
Jury, the defendant in this case, as bailee of the property, has really the burden to satisfy you jurors that
while he had these goods he exercised ordinary care."

This was error. The correct rule is stated in *Schell v. Miller North Broad Storage Company,* 142 Pa. Superior Ct. 293, 301, 16 A. 2d 680 (1940) and quoted in *Moss v. Bailey Sales & Service, Inc.,* supra, 385 Pa. 547, 551, 123 A. 2d 425 (1956) in the following language: "When the bailor has proved a bailment, demand, and failure to deliver, it then becomes incumbent upon the bailee to go forward with proofs *not necessarily showing that he used proper care in handling the bailment* but merely showing 'by clear and satisfactory proof that the goods were lost, and the manner [in which] they were lost.' When the bailee has furnished such proofs . . . and [the] proofs do not disclose lack of due care on his part, then the bailor, if he would recover, must prove negligence on the part of the bailee and the bailee's negligence becomes the vital issue." (Emphasis supplied)

We are not satisfied that this error in the charge was corrected by the trial judge also saying ". . . if you find that the plaintiff has not met the burden of proof your verdict shall be for the defendant."

Although the evidence of negligence is meager, we think the question may be for the jury, and that justice can be best administered through refusing the motion for judgment n.o.v. but granting the motion for a new trial.

Judgment reversed and a new trial granted.