Montgomery et al. *v.* Van Ronk, Appellant.

Argued December 6, 1937.   Before SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*William N. Trinkle,* with him *Frank F. Truscott,* for appellant.

*C. Brewster Rhoads,* with him *John F. Headly* and *Montgomery & McCracken,* for appellees.

OPINION BY MR. JUSTICE STERN, January 3, 1938:

On February 19, 1931, defendant opened a margin account with plaintiff stockbrokers. Stocks were purchased and held by plaintiffs as security for advances. From time to time plaintiffs demanded additional margin, and on February 2, 1932, wrote to defendant that unless the account was adjusted to their satisfaction before the close of business the following Friday they would liquidate it on Saturday morning. A day after defendant received this letter a representative of plaintiffs called him on the telephone and, according to defendant's version of the conversation, "asked me if I was ready to put up the securities and my statement was 'No, I am sick of this thing. Sell it out.'" This is denied by plaintiffs, but, for purposes of the present appeal, must be accepted as true, although parenthetically it may be observed that defendant's answer was ambiguous, it not being clear whether it was intended to be a categorical order to sell, or merely an expression of submission if plaintiffs insisted upon carrying out their threat. They did not in fact sell the securities, and continued as theretofore to send monthly statements of the account, which defendant received and retained without any objection or complaint. On March 3, certified public accountants employed by plaintiffs sent to defendant a statement of the account as it appeared on plaintiffs' books as of February 29, asking him to return it with his signed approval if he found it correct; defendant promptly signed and returned it to

the accountants. Of course, this statement, as all those rendered monthly thereafter, showed that none of the securities had been sold. On August 1, defendant received a dividend check in the sum of $750 on stock of Philadelphia Insulated Wire Company held in the account, and he endorsed this check and used the proceeds. Defendant admits that some time between February and August plaintiffs invited him to help them dispose of this stock, which then constituted most of the collateral, and that he conferred with them for that purpose. The company was a small one, of which he himself was a director, and there was no bid for the stock in the general market.

On October 22, plaintiffs wrote to defendant that unless he communicated with them before the opening of the market on the 24th they would start to sell out the account, and, not hearing from him, they sold all the securities on October 24 and 25, leaving a debit balance of $12,084.29, for which, with interest from October 26, 1932, they brought the present suit. The court below refused plaintiffs' point for binding instructions and left to the jury the question as to whether or not, in the telephone conversation of February 3, defendant had instructed plaintiffs to sell the securities. The jury disagreed and were discharged, but subsequently the court entered judgment for plaintiffs on the whole record, from which judgment defendant appeals.

The principle is firmly established in the law of agency as applied to stockbrokers that if a broker violates the instructions given by his customer, but the latter, with full knowledge of the facts, fails to express dissent within a reasonable time, such silence impliedly amounts to an adoption of the broker's act, not only as to third persons but also as between the customer and the broker themselves. If the customer does not repudiate the broker's unauthorized act by seasonable complaint and disavowal of the transaction, he is deemed to acquiesce therein. Ratification by the customer is not dependent

solely upon words or acts indicating an intent to ratify, but, on the contrary, affirmative repudiation is necessary to prevent an implied ratification. He cannot stand by and appropriate the benefit of the broker's conduct if profitable, or renounce it if otherwise, at his election; he cannot speculate at the broker's expense; and this is especially true if the instructions of the customer are more or less ambiguous, and the broker's unauthorized acts or omissions are not the result of fraud or wilful defiance.*

Almost immediately after February, 1932, defendant knew that the securities in the account had not been sold. He nevertheless received in silence monthly statements of the account, and these accordingly became not only evidence of his acquiescence in their correctness but conclusive thereof in the absence of any explanation of his failure to object to them, or of fraud or mistake. The case against defendant does not rest, however, merely upon his inaction. His signed approval of the statement sent him by the public accountants who were acting on behalf of plaintiffs, his later conference with plaintiffs as to the best method of disposing of the Philadelphia Insulated Wire Company stock, and his acceptance of the dividend thereon, clearly indicated that he did not intend to stand upon the alleged

---

* The formulation and application of these principles are illustrated in such cases as *Searing v. Butler,* 69 Ill. 575; *Schaefer v. Dickinson,* 141 Ill. App. 234; *Law v. Cross,* 66 U. S. 533, 539; *Stein Bros. & Boyce v. State Bank of Stearns,* 255 Ky. 270, 73 S. W. (2d) 13; *Bray v. Gunn,* 53 Ga. 144; *Halloway v. Arkansas City Milling Co.,* 77 Kans. 76, 93 Pac. 577; *Sullivan v. Bennett,* 261 Mich. 232, 246 N. W. 90; *Argus v. Ware,* 155 Ia. 583, 136 N. W. 774; *Griffin v. Payne,* 133 Cal. App. 363, 24 Pac. (2d) 370; *Craig v. Pierce,* 246 N. Y. Supp. 573; *Royal Bank of Canada v. Universal Export Corporation,* 10 Fed. (2d) 669, 671; *Leviten v. Bickley, Mandeville & Wimple,* 35 Fed. (2d) 825; *Porter v. Patterson,* 15 Pa. 229, 235; *Schrack v. McKnight,* 84 Pa. 26, 29; *Colket v. Ellis,* 10 Phila. 375, 379. See also Meyer on Stock Brokers and Stock Exchanges, pp. 410, 411, 412, sec. 101.

512

peremptory sale order of February 3, and plaintiffs were justified in so assuming. While the question of ratification ordinarily would be for the jury, in the present case, where all the facts bearing upon the question were admitted and their purport clear, it became a matter of law for the court, and was properly disposed of by the entry of judgment for plaintiffs upon the whole record: *Leviten v. Bickley, Mandeville & Wimple,* 35 Fed. (2d) 825, 828, 829.

It may be added, in order to cover all phases of the controversy, that defendant did not prove any loss resulting from the belated sale of the securities. He admitted that the Philadelphia Insulated Wire Company stock could not have been disposed of immediately after February 3, 1932, or by any forced sale, at a price reasonably commensurate with its value, and he failed to produce any evidence as to its actual, realizable, market value for the period between February and October, 1932.

Defendant contends that the interest charged by plaintiffs was usurious because compounded monthly. At the rate adopted, however, it did not in the aggregate exceed six per cent per annum. Moreover, the Act of April 18, 1929, P. L. 620, permits parties to agree upon any sum as compensation for demand loans of not less than $5,000 with stocks or bonds pledged as collateral security. The written contract entered into between the parties when the account was started provided that plaintiffs could charge as interest such sums as they might determine to be reasonable in view of the current cost of money, even though in excess of a rate of six per cent on balances due.

The judgment is affirmed.