## Universal Film Exchanges, Inc., v. Viking Theatre Corp.

*Arlin M. Adams*, for plaintiff.
*Harold E. Kohn* and *Aaron M. Fine*, for defendant.

HAGAN, P. J., July 30, 1959.—This is an action in assumpsit which was tried before the writer of this opinion sitting without a jury, and which resulted in a finding in favor of plaintiff in the sum of $14,437.99, with interest of $2,719.14. Exceptions to the finding of the court were filed by defendant, and these exceptions are now before the court en banc.

The exceptions of defendant are directed to the rulings of the trial judge, and particularly to his rulings in respect to the issues arising from the pleadings and the exclusion of evidence on the ground of irrelevancy to the issues. Therefore, as a fitting prologue to this opinion, we shall analyze the pleadings and the issues which arise therefrom. The complaint averred that plaintiff is engaged in the business of distributing and licensing motion picture films for exhibition at theaters, that defendant is the operator of the Viking Theatre in the City of Philadelphia, that on or about September 7, 1955, plaintiff and defendant entered into a written contract, by the terms of which plaintiff licensed or rented to defendant a motion picture film entitled "There's Always Tomorrow", that on or about September 7, 1955, plaintiff and defendant entered into a separate written contract, by the terms of which plaintiff licensed or rented to defendant a motion picture film entitled "Never Say Goodbye", that the contracted rental of the film "There's Always Tomorrow" provided for the payment of a guaranteed sum of $17,500, with certain adjustments between the parties as to the gross receipts from the film and the payment of certain advertising costs by plaintiff, that the contracted rental of the film "Never Say Goodbye" provided for the payment of a guaranteed sum of $22,500, with certain adjustments between the parties as to the gross receipts from the film and the payment of certain advertising costs by plaintiff, that defendant exhibited both films, and therefore, in accordance with

the written contracts, the minimum guaranteed film rentals of $17,500 and $22,500 became due and owing to plaintiff by defendant, that defendant paid plaintiff the sum of $6,922.74 on account of the film rental due for "There's Always Tomorrow", and that defendant made no payment to plaintiff on account of the film rental due for "Never Say Goodbye", leaving an unpaid balance on the rental of the two films of $33,077.26, and that by reason of advertising allowances defendant became entitled to a credit against the film rentals in the sum of $18,639.27, leaving a balance due and owing by defendant to plaintiff in the sum of $14,-437.99, which was the principal sum for which suit was brought.

Defendant filed an answer containing new matter and a counterclaim. The answer denied that the written contracts for the licensing of the films "There's Always Tomorrow" and "Never Say Goodbye" set forth the true agreement between the parties, and averred, to the contrary, that the true agreement between the parties was as set forth under the headings of new matter and counterclaim. The answer admitted that an advertising allowance of $18,629.37 was due to defendant by plaintiff, but it denied that any balance was due and owing to plaintiff by defendant, for the reasons set forth in the new matter and counterclaim.

Defendant's new matter averred that defendant sought to license from plaintiff a film entitled "All That Heaven Allows", which plaintiff refused to license except on condition that defendant also license from plaintiff three other films, entitled "The Second Greatest Sex", "There's Always Tomorrow" and "Never Say Goodbye", that defendant was forced to license all four films, although it only desired to license "All That Heaven Allows", because defendant required that film in order to continue its business operations, that plaintiff's conduct in forcing defendant to license four films

in order to receive the one it desired was unlawful in that: (a) It violated a certain decree entered on February 8, 1950, in a case brought by the United States of America in the District Court for the Southern District of New York, and (b) it was part of a conspiracy with other distributors in violation of the anti-trust laws of the United States, and that, as a result of said illegality, plaintiff was barred from making any recovery against defendant in this present action.

Defendant's counterclaim repeated the averment of the allegedly illegal "tie-in" of films as set forth in defendant's new matter, and it also averred that at the time of the alleged agreement for the licensing of the four films plaintiff, in order to induce defendant to license all four films, agreed to the following: "(a) That despite the written guarantee contained in each individual license, if the defendant sustained a loss on all four pictures as a group, the plaintiff would waive the written guarantees and instead would reimburse the defendant for all losses; (b) That the defendant would receive thereafter a license for a motion picture distributed by the plaintiff entitled 'Away All Boats'; (c) That the picture 'The Second Greatest Sex' would be available for exhibition at the defendant's theatre on November 16, 1955." Defendant further averred that plaintiff, acting through its authorized agent, one Pete Dana, repeated the alleged promise set forth in paragraph 22(a) of the counterclaim as quoted above, and that this promise was repeated "to induce defendant to continue with the arrangement." Defendant averred that it had sustained a loss on all four films in the amount of the counterclaim. Defendant further averred that there were other breaches by plaintiff of the terms set forth in paragraph 22 of the counterclaim, for which defendant counterclaimed for damages. Finally, the counterclaim averred that on or

about March 21, 1956, plaintiff, through its authorized agent, promised defendant a minimum of $15,000 to cover the losses allegedly sustained by defendant.

Plaintiff filed a reply to defendant's new matter and counterclaim, denying all of the factual averments contained therein.

From the foregoing analysis of the pleadings it will be seen that the complaint sets forth two written contracts, and an averment that they were fully performed by plaintiff. The answer does not deny, and therefore admits, the execution of the two contracts and that they were performed, but the answer denies that defendant is indebted to plaintiff because of certain other circumstances pleaded under the headings of new matter and counterclaim. We must therefore examine the averments in defendant's new matter and counterclaim to determine what, if any, legal defenses are set forth therein to the otherwise valid claim of plaintiff.

From an examination of defendant's new matter, it will be seen that it contains the factual averment that the two written contracts sued upon by plaintiff, one relating to the film "There's Always Tomorrow" and the other relating to the film "Never Say Goodbye", do not represent the actual agreement of the parties, but that, in fact, the licensing of these two films was part of a "tie-in" arrangement which included three other films. Defendant's legal position in support of this factual averment is that the contracts are illegal and unenforceable for two reasons. The first of these is set forth in a statement in paragraph 16 that the alleged "tie-in" agreement was "in violation of a decree entered against the plaintiff on February 8, 1950, in the United States District Court for the Southern District of New York, in the case of United States v. Paramount, et al." No copy of the Federal court decree was attached to defendant's pleadings; it was not of-

fered in evidence at the trial, nor was there any evidence introduced or any offer of proof made with respect to the decree. Furthermore, none of defendant's exceptions to the trial judge's findings were directed toward any action of the court with respect to the Federal court decree, and defendant's brief in support of its exceptions advanced no argument based upon the decree or any alleged violation thereof by plaintiff. We must therefore conclude that defendant has abandoned any defense predicated upon the alleged violation by plaintiff of a decree of a Federal court. Finally, let it be said that if defendant at trial had offered to prove a violation by plaintiff of a decree of a Federal court, the offer would have been properly rejected, on the ground that this court has no power to enforce a decree of a Federal court. See S. Jarvis Adams Company v. Knapp, 213 Pa. 567; Buswell v. Buswell, 377 Pa. 487.

The second alleged ground of illegality is that plaintiff's conduct was part of a conspiracy in violation of the Federal anti-trust laws. This defense was set forth in paragraphs 18 and 19 of defendant's new matter, but at the trial this defense was abandoned by the withdrawal by defendant of these paragraphs. The withdrawal by defendant of the anti-trust defense was undoubtedly motivated by the decision of the United States Supreme Court in the very recent case of Kelly v. Kosuga, 358 U. S. 516, 3 L. Ed. 2d 475, 79 S. Ct. 429, which held, in a case factually very similar to this, that the defense of illegality under the Federal anti-trust act may not be asserted as a defense to an action under an executed contract entered into under State law.

It will be seen, therefore, that defendant's new matter averred no facts which would legally constitute a defense to plaintiff's complaint. We will next examine

the averments of defendant's counterclaim to determine what, if any, legal issues arose therefrom.

The counterclaim first averred that the two separate contracts upon which plaintiff sued, one covering "There's Always Tomorrow" and the other "Never Say Goodbye", did not, in fact, represent the actual agreement between the parties. To the contrary, it was averred that the two films sued upon by plaintiff were actually a part of an oral agreement entered into at the same time the two written contracts were executed. As a part of this oral agreement, defendant averred that plaintiff agreed: (1) To license two other films to defendant; (2) that, notwithstanding the guaranteed minimum rentals stipulated in the contracts for the films "There's Always Tomorrow" and "Never Say Goodbye", plaintiff agreed to reimburse defendant for any loss sustained by defendant in connection with these two films and the films "The Second Greatest Sex" and "All That Heaven Allows", considering these four films as a unit in computing the loss; (3) that plaintiff would, in the future, license to defendant a fifth film, "Away All Boats"; and (4) that one of the four films covered in the alleged oral agreement, to wit, "The Second Greatest Sex", would be made available by plaintiff for exhibition at defendant's theater on a certain specified date. The counterclaim then averred that plaintiff had failed to abide by the alleged oral agreement and that, as a result defendant sustained damages in the amount set forth in the counterclaim.

The foregoing analysis of defendant's counterclaim reveals a very patent inconsistency in the pleadings of defendant. Thus defendant first contends that the oral agreement which defendant averred was the true agreement of the parties, rather than the two written contracts upon which plaintiff's action is based, was illegal and unenforceable by plaintiff, and then defend-

ant counterclaims for damages arising from plaintiff's breach of this alleged agreement. However, apart from this bold incongruity in defendant's pleadings, it is clear that defendant's counterclaim, in so far as it is based upon the alleged oral agreement pleaded by defendant, cannot prevail because of the parol evidence rule.

All of that portion of defendant's counterclaim which has been treated thus far is founded upon the basic averment that the dealings between the parties were not reflected in the two separate contracts declared upon by plaintiff, one contract relating to the film "There's Always Tomorrow" and the other relating to the film "Never Say Goodbye", but that in fact there was but one contemporaneous oral agreement covering five films, of which the two films covered in the written contracts were merely part. Unfortunately for this contention, paragraph 13 of each of the two written contracts sued upon by plaintiff provides as follows:

"This license agreement is complete and no promises or representations of any kind have been made by either party to the other except as expressly set forth herein. No change or modification hereof shall be binding upon the Distributor unless in writing signed by the General Sales Manager or an officer of the Distributor."

Each of the two written license contracts sued upon also contains on the front page in large print the following clause:

"The Exhibitor represents and agrees that insofar as more than one feature length motion picture is licensed hereunder, the terms of the license for each one of the said feature length motion pictures was negotiated separately, that the licensing of one feature length motion picture was in no wise conditioned upon the licensing of any other feature length motion pic-

ture and that the several feature length motion pictures were so included in this licensed agreement for reasons of mutual convenience."

Ever since the leading case of Gianni v. Russell & Co., Inc., 281 Pa. 320, 323, it has been well settled law in Pennsylvania that:

" 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement' . . . 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' "

Under the terms of the two contracts sued upon by plaintiff, *which clearly state that each contract covers the licensing of one specific film and that film only*, it is clear that defendant is precluded by the parol evidence rule from asserting a contemporaneous oral agreement not only with respect to the two films licensed by the two separate contracts sued upon, but also with respect to three other films. From this it follows that defendant is also precluded from asserting any oral agreements which are based upon the premise that the actual agreement between the parties was for five films and not for the two covered by the written contracts.

The only other factual averments contained in defendant's counterclaim are those which appear in paragraphs 23 and 26, to the effect that subsequent to the date of the execution of the two written contracts sued upon by plaintiff, and subsequent to the alleged contemporaneous oral agreement, plaintiff, acting through one Pete Dana, made two promises to

defendant in recognition of the alleged oral agreement that plaintiff was to reimburse defendant if any loss were sustained on all four films considered as a group.

As we have previously stated, although the parol evidence rule would exclude any testimony to prove the oral agreement allegedly entered into contemporaneously with the two written contracts declared upon by plaintiff, it has been held that a defendant may introduce clear, precise and convincing evidence to show that a plaintiff has admitted and acknowledged that the written contract declared upon did not express the true agreement of the parties. See Boyd Estate, 394 Pa. 225, 233, and the cases cited therein. The statements contained in paragraphs 23 and 26 of defendant's counterclaim do not, on their face, appear to us sufficient to constitute a clear averment of an admission or acknowledgment by plaintiff that the written contracts do not express the true intention of the parties. However, in view of the fact that no preliminary objection or motion for judgment on the pleadings was filed by plaintiff, we shall consider the statements in paragraphs 23 and 26 as sufficient to constitute such an admission or acknowledgment by plaintiff.

Summarizing defendant's answer, new matter and counterclaim, it is apparent that the defense of illegality raised in new matter was legally ineffective and, in fact, was partially withdrawn, and that the defense raised in defendant's counterclaim, to the effect that the two written contracts sued upon did not reflect the true agreement of the parties, was also not sufficient to permit defendant to prove that there was a contemporaneous oral agreement in respect to five films rather than the two films covered by the written contracts declared upon by plaintiffs. Thus, the only legal defense which could possibly have been considered to

have been raised by defendant's pleadings was the defense set forth in the counterclaim, to the effect that there was a subsequent admission and acknowledgment by plaintiff that the written contracts did not embody the true agreement of the parties. Therefore, the only evidence which the trial judge could have properly received was evidence in support of this defense, and we shall now examine the evidence offered by defendant.

Defendant offered to prove, through the testimony of Harry Sley, president of defendant corporation, and through Jay Wren, general manager and executive vice president of defendant corporation, that one Pete Dana, eastern divisional sales manager of plaintiff corporation at the time in question, stated to Sley and Wren that plaintiff was making an adjustment of not less than $15,000 on the four films, "There's Always Tomorrow", "Never Say Goodbye", "The Second Greatest Sex" and "All That Heaven Allows". As part of the same offer, defendant also sought to prove that this offer of adjustment was later withdrawn by plaintiff.

As we have previously stated, it has been held in Allinger v. Melvin, 315 Pa. 298; Newland v. Lehigh Valley Railroad Company, 315 Pa. 193; Bryant v. Bryant, 295 Pa. 146; Ward v. Zeigler, 285 Pa. 557; Howell v. Wheelock, 115 Pa. Superior Ct. 599; Frederick Estate, 156 Pa. Superior Ct. 547; and Boyd Estate, 394 Pa. 225, 233, that a defendant may introduce clear, precise and convincing evidence to show that a plaintiff who seeks to enforce a written contract according to its terms has previously admitted and acknowledged that the written contract did not express the true intention of the parties. It is clear that defendant's offer of proof fell far short of any acknowledgment by plaintiff that the written contracts sued upon did not express the agreement of the parties to the con-

tracts. Assuming, arguendo, that the offer as to the proposed testimony of Sley and Wren met the standard of clear, precise and convincing evidence, nevertheless the offer still would have been insufficient to prevent the application of the parol evidence rule, for the reason that the only evidence of any admission by plaintiff that the written contracts did not reflect the true agreement of the parties would have been the testimony of two officers of defendant corporation to the effect that an officer of plaintiff corporation had, subsequent to the date of the execution of the written contracts, orally made such an admission to them. No. case in Pennsylvania has ever gone so far as to permit the terms of a written contract to be altered or varied by such testimony.

Prior to the decision of the Supreme Court in Boyd Estate, supra, an admission that a written contract did not embody all of the terms of the agreement between the parties could only be established by testimony to that effect by the party seeking to enforce the contract. The decision in the Boyd Estate would seem to have enlarged the scope of the parol evidence rule, but not as far as defendant here would have us go. In the Boyd case there was not only the testimony of two witnesses who were not parties to the written contract to the effect that the party seeking to enforce the contract had made a subsequent admission that the contract did not reflect the true agreement between the parties, but, in addition, the party seeking to enforce the contract had also made such an admission in his pleadings. In this case the parol evidence rule would have been almost completely nullified had the trial judge permitted Sley and Wren to have testified that, after the execution of the written contracts, Dana had admitted that the contracts did not reflect the true agreement of the parties.

It has also been argued by defendant that even if the testimony of Sley and Wren was properly rejected as a violation of the parol evidence rule, the testimony should have been admitted on the ground that it constituted evidence of a modification of a written contract by a subsequent parol agreement. There are several reasons why this argument is untenable. In the first place, no such subsequent oral modification of the written contracts was pleaded by defendant. In the second place, defendant's offer of proof at best was an attempt merely to show an offer of a parol modification of the contracts, which offer of modification had subsequently been withdrawn. In any event, and taking the offer of proof at its best, i.e., that the evidence in support of the offer would show a parol agreement between the parties of the modification of the written contracts to the extent that plaintiff, *after the films had been exhibited,* had agreed to accept less than the rentals stipulated in the written contracts, it was properly rejected, for the reason that there was no offer to prove any consideration for the alleged parol modification of the contracts. See Thomas v. Hill Top Section of the German Beneficial Union, 260 Pa. 1; National Bank of Fayette County v. Valentich, 343 Pa. 132.

Defendant also offered to prove, through the testimony of Mr. Wren, general manager and executive vice president, that while the film "The Second Greatest Sex" was playing at defendant's theater, defendant complained to plaintiff about the latter's advertising of that film, and that Mr. Dana, plaintiff's sales manager, told Wren that he, Dana, would "see that you [defendant] are not hurt" because of poor advertising "or for any other reason" and that "if you [defendant] do not make any money on this picture, you are going to be reimbursed." In so far as this offer was an attempt to prove a contract modification with respect to

the advertising of "The Second Greatest Sex", it was clearly beyond the scope of any of the issues raised in the pleadings and was therefore inadmissible. If it be considered as an offer to prove either that there was a subsequent admission by plaintiff that the written contracts did not reflect the true agreements, or that there was a subsequent oral modification of the written contracts, it was clearly inadmissible for these purposes for most of the same reasons previously set forth herein with respect to the testimony of Sley and Wren.

Defendant also offered to prove by the testimony of Sam Friedel, the head of the statistical department of plaintiff corporation during the period in question, that after the four films had been exhibited by defendant, Friedel had been requested by Dana to make a calculation of the alleged adjustment due defendant on the four films in question, and that Friedel had computed this sum at $24,320.10.

If the offer of proof with respect to Friedel is to be treated as an offer to prove certain facts through the testimony of Friedel, as the offer clearly indicated, it was entirely improper, because it was admitted by defendant that Friedel had not been subpoenaed by defendant and that he was not within the jurisdiction of the subpoena power of this court. When this circumstance was called to the attention of counsel for defendant, he indicated that what he was seeking to offer in evidence was the gist of certain testimony given in a pretrial deposition of Friedel. Counsel for plaintiff then stated that if defendant intended to offer in evidence a portion of Friedel's deposition, plaintiff would have no objection, but that plaintiff would then offer in evidence the balance of the deposition, as it is permitted to do under Pa. R. C. P. 4020(a)(4). However, defendant did not offer any specific portion of Friedel's deposition. It is there-

fore abundantly clear that the trial judge committed no error in refusing defendant's offer of proof with respect to the testimony of Friedel.

Defendant also made many offers to prove those averments of the answer, new matter and counterclaim which were legally ineffective to operate as defenses to plaintiff's claim. For the reasons previously set forth in the discussion of the pleadings, these offers were properly rejected.

In apparent recognition of the weakness of its case as pleaded, defendant amended its pleadings at the trial by adding an averment of a custom in the motion picture trade that, despite the terms of written license agreements, it was customary to grant reasonable adjustments in film rentals where either the gross receipts from the exhibition of the film were less than anticipated, or the rental set forth in the written agreement was unreasonably high in proportion to the gross receipts. Defendant then offered to prove such a custom through the testimony of a number of witnesses. Plaintiff objected to such offers of proof, and the court sustained the objections. The two written contracts sued upon by plaintiff were very clear and explicit to the effect that defendant was obligated to pay a minimum guaranteed rental, in one instance of $17,500 and in the other of $22,500. The law is well settled that where, as here, the terms of a contract are clear and unambiguous, evidence of a custom to the contrary is inadmissible to vary those terms. See Cost v. Dean, 161 Pa. Superior Ct. 160; Grocery World Publication Co. v. Clayberger, 68 Pa. Superior Ct. 618. Therefore, defendant's offers of proof with respect to a custom in the motion picture trade were properly excluded.

Finally, defendant has argued that the written contracts are ambiguous, and that for this reason parol

evidence should have been admitted to explain the ambiguity. Defendant, however, did not plead any ambiguity. To the contrary, with respect to the only provision in the contract as to which an ambiguity would be of any importance, namely, the provision concerning the rental terms, defendant's pleadings tacitly recognized that there was no ambiguity. Thus, in paragraph 22(a) of defendant's counterclaim, in which defendant set forth the alleged oral agreement under which plaintiff was to reimburse defendant in the event that defendant sustained a loss on all four pictures, it was averred that this agreement was made "despite the written *guarantee* contained in each individual license."

The only alleged ambiguities in the two written contracts sued upon by plaintiff to which defendant has been able to direct our attention are those which have no relation to any of the issues in dispute in this case. It is true that where a contract is ambiguous as to a particular provision, parol evidence is admissible, but it is admissible merely to resolve that particular ambiguity: Morgan v. Phillips, 385 Pa. 9, 14; Creighan v. Pittsburgh, 389 Pa. 569, 578. A party may not create an ambiguity for the purpose of opening up an entire contract to parol evidence: Dahath Electric Company v. Suburban Electric Development Company, 332 Pa. 129, 133; Fischer & Porter Company v. Porter, 364 Pa. 495, 502.

For all the foregoing reasons, we hold that the finding in favor of plaintiff was proper, and defendant's exceptions to the finding of the trial judge are hereby dismissed, and judgment is entered on the finding.