NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2726
_____

TOWNSHIP OF SPRING,
                                        Appellant

v.

STANDARD INSURANCE CO.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-09-cv-05518)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2012

Before:  SLOVITER, RENDELL, and HARDIMAN, *Circuit Judges*.

(Filed: September 20, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Township of Spring (the Township) appeals the District Court's summary

judgment on its contract and tort claims against Standard Insurance Company.  We will

affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history.

In January 2003, the parties entered into two Group Annuity Contracts (the Contracts), under which Standard agreed to invest the Township's retirement and pension assets pursuant to the Township's instructions. The Contracts indicated that the Township "(or person(s) [it] nominate[d]) [was] the Plan Administrator who ha[d] the authority to control and manage the operation and administration of the Plan and Plan assets" and that Standard did "not assume this responsibility." App. 254. The Contracts also contained the following provisions governing termination by the Township:

a.  Terminate At Any Time. You may terminate this Contract at any time when Written Notice is delivered to us.

b.  Specify Effective Date. The Written Notice shall specify a date on which termination shall be effective. However, the date chosen for termination shall not be earlier than thirty (30) days after we receive your Written Notice at our Home Office, unless we agree otherwise.

App. 114, 145. Finally, the Contracts expressly limited Standard to "those duties, obligations, and responsibilities specifically described in th[e] Contract[s]." App. 255.

Five years later, the Township decided to transfer its pension and retirement funds from Standard to Nationwide Trust Company. The Township hired The Trollinger Group to provide advice on its investments and to facilitate the funds transfer. Trollinger employee Ronald Bittner was assigned to the task. Bittner prepared two letters on the

2

Township's behalf requesting termination of the Contracts and sent them to Standard on September 29, 2008. The letters requested "the immediate release of all funds" from the two plans and instructed Standard to "[l]iquidate all assets (100%) regardless of where they are placed" and, "[o]n October 7, 2008, send a wire transfer for the full amount of said assets" to Nationwide. App. 165–68.

On October 1, Standard employee Robin Hochstetler sent an e-mail to Township Treasurer Tracy Daniels acknowledging receipt of the letters and requesting that the Township complete Contract Termination Request Forms. The Forms required the Township to specify an "[e]xpected date of transfer" and, consistent with the Contracts' termination provisions, included a reminder that the date of transfer "[m]ust be at least 30 days from the date this form is received by Standard." App. 306–07. Bittner admitted at his deposition that he became aware of the thirty-day notice requirement only when he received the Forms bearing the reminder. Having failed to account for that provision in the termination letters, he changed the expected transfer date in the Forms to November 7, 2008. Bittner and the Township returned the Forms to Standard on October 10, 2008.

That same day, Bittner e-mailed Hochstetler at Standard asking that she "make sure that the assets of both plans ha[d] been liquidated into a safe cash option in accordance with the Township's previous instructions" in its termination letters. App. 314. Two hours later, Hochstetler e-mailed Daniels an Investment Directive Form in order to facilitate the reallocation of the Township's funds. By two o'clock that

3

afternoon, Daniels had completed and transmitted the Forms, directing that 100% of the Township's assets be placed in a "stable asset fund II." The Township's pension and retirement funds were immediately moved to a stable asset fund, where they remained until they were transferred to Nationwide on October 29, 2008.

Because of the extreme volatility that plagued stock markets in October 2008, between September 29, when the Township first notified Standard of its desire to terminate the Contracts, and October 10, when the funds were placed in a stable asset fund, the Township's two plans lost a combined $393,574. The Township blames Standard for those losses.

Accordingly, in October 2009, the Township sued Standard in the Court of Common Pleas of Berks County, Pennsylvania, asserting breaches of contract and fiduciary duty. Standard removed the case to the United States District Court for the Eastern District of Pennsylvania based on diversity of citizenship, *see* 28 U.S.C. § 1332, and, at the close of discovery, moved for summary judgment. The District Court granted the motion, and the Township timely appealed.

## II

We exercise plenary review over the District Court's summary judgment. *E.g.*, *Powell v. Symons*, 680 F.3d 301, 306 (3d Cir. 2012). Summary judgment is appropriate only where, viewing the facts "in the light most favorable to the nonmoving party," *Scott v. Harris*, 550 U.S. 372, 380 (2007), there is "no genuine dispute as to any material fact,"

4

such that he is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## III

The Township contends that Standard breached its contractual and implied fiduciary obligations by failing to liquidate the plan assets or convert them into a "safe cash option" by October 7, 2008. Relatedly, it asserts that Hochstetler was unprepared to effectuate the Township's instructions and advise the Township regarding the Contracts. The gravamen of the Township's complaint is that Standard failed to respond competently, diligently, and expeditiously to its requests.

The District Court rejected the Township's breach-of-contract claim because the Township identified no specific provision in the Contracts that Standard had violated. On the breach-of-fiduciary-duty claim, the Court reached two preliminary conclusions in the Township's favor. First, it found that the Contracts' disclaimers of plan-management obligations were insufficient to relieve Standard of all fiduciary duties to the Township. Second, it determined that Standard's responsibility for transferring plan assets at the Township's request likened it to a stockbroker in a non-discretionary investment arrangement, a situation in which fiduciary obligations are well-established. *See Merrill*

5

*Lynch, Pierce, Fenner & Smith v. Perelle*, 514 A.2d 552, 561 (Pa. Super. Ct. 1986). *See generally id.* at 561 n.9 ("A non-discretionary account is an account in which the customer rather than the broker determines which purchases and sales to make.").

Nevertheless, the District Court reasoned that "only the duty to carry out the customer's orders promptly in a manner best suited to serve the customer's interests" was implicated in this case[1] and that only unambiguous instructions by an investing client can trigger this obligation. App. 752–53. The Township's instruction to "liquidate," the Court concluded, was susceptible to two possible interpretations, and Standard's reading of that language—requesting liquidation incident to the ultimate transfer—was reasonable. Finding that no jury could conclude that Standard breached its fiduciary duties, the District Court granted summary judgment.

We will affirm, largely for the reasons set forth by the District Court. We agree fully with the Court's breach-of-contract conclusion: the Township does not and cannot point to any contractual provision that Standard did not honor. When the Township provided termination Forms that complied with the thirty-day notice requirement,

---

[1] Non-discretionary brokers also owe their clients duties to:

(1) . . . recommend a stock only after studying it sufficiently[;] . . . (3) . . . inform the customer of the risks involved in purchasing or selling a particular security; (4) . . . refrain from self-dealing . . . ; (5) . . . not [] misrepresent any fact material to the transaction; and (6) . . . transact business only after receiving prior authorization from the customer.

6

Standard upheld its end of the bargain, even transferring the funds nine days before the November 7 transfer date requested in the Forms. Plaintiffs misunderstand the basic import of contract liability when they argue that "there was nothing in Standard's Contracts or policies that would have *prevented* the liquidation of the pension funds . . . on October 7." Township's Br. 23 (emphasis added). The Township must, but cannot, identify a provision of the Contracts that *required* Standard to liquidate the funds by October 7.[2] *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (listing "breach of a *duty imposed by the contract*" as an essential element of a breach-of-contract claim (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (emphasis added) (internal quotation marks omitted)).

We next turn to the Township's fiduciary-duty allegations. We need not determine whether Standard owed implied fiduciary obligations to the Township because, even

---

*Perelle*, 514 A.2d at 561 (citations omitted).

[2] In addition to relying on the formal Contracts, the Township contends that a new contract was formed "in the communications that occurred between September 29, 2008[,] and October 7, 2008." Township's Br. 21. We reject this argument because it is unsupported in the record. As the Township points out, Bittner did testify that Standard "receive[d] some acknowledgment . . . through e-mail that they were in receipt of the letters and that they would be liquidating and transferring the funds as directed." App. 286. However, the e-mails of record and Bittner's own testimony demonstrate that Standard never agreed to liquidate, transfer, or reallocate the funds by October 7 but merely acknowledged receipt of the letters and later the termination forms. As Bittner himself explained, his communications with Standard during that time involved "verify[ing] the thirty day requirement" and "attempt[ing] to make sure that [the Township was] completing the form such that [Standard] would accept it and that the

assuming it did by virtue of its similarity to a non-discretionary broker, we find no genuine dispute that it met those obligations. As the District Court explained, the Township's termination letters of September 29 did not unambiguously instruct that the plan funds be liquidated on any specific date. Rather, the instruction to liquidate could be interpreted either as: (1) asking Standard to liquidate the plan funds *at some point* in the process of preparing to transfer the funds to Nationwide, which Standard did not have to do until at least October 29, 2008; or (2) construed generously in the Township's favor, requesting that the funds be turned into cash immediately. Bittner, who drafted the letters, conceded that "there[ was] nothing in the letter[s] that set[] forth a specific date prior to the 7th . . . where the [T]ownship [was] requesting that the funds be reduced to cash." App. 286. Daniels likewise testified that the letters did not instruct Standard to reallocate or liquidate the Township's plan assets on any particular date. And Bittner admitted that even he did not know when, in response to the letters, Standard would liquidate the Township's plan assets.

The Township argues that the letters' ambiguity precludes summary judgment. To the contrary, in these circumstances, any ambiguity in the Township's communications forecloses a finding that Standard breached its fiduciary duty to effectuate the Township's requests competently and diligently. Only unambiguous instructions trigger such a duty.

---

thirty day notice would be sufficient and that the timing of the withdrawal would then occur . . . in early November." App. 290.

*See, e.g.*, *Montgomery v. Van Ronk*, 195 A. 910, 911–12 (Pa. 1938) (explaining that a customer cannot prevail on a breach-of-fiduciary-duty claim where his broker fails to follow his instructions if he does not repudiate or correct the broker's action, "especially . . . if the instructions of the customer are more or less ambiguous"); *cf. Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F. Supp. 2d 701, 708–09 (W.D. Pa. 2003) (finding a breach where "Merrill Lynch failed to sell the 100,000 shares . . . despite the 'a [sic] clear and unambiguous' instructions of [the client]").

The Township's argument that "Standard failed to fulfill its duties of competence and diligence by appointing an untrained, inexperienced and misinformed employee to handle the liquidation of the Township's accounts" is likewise meritless. Township's Br. 13. There is no genuine dispute that Hochstetler responded promptly (often immediately), transmitted the correct forms, and effectuated the reallocation of the Township's plan monies into stable asset funds upon receipt of specific instructions to do so. The Township also complains that Hochstetler should have corrected its misunderstandings regarding its termination and reallocation rights or advised it regarding ways to expedite the termination process. But it identifies no support (in the Contracts or otherwise) for the proposition that Standard or Hochstetler should be liable for the Township's own failure to read, understand, and comply with the Contracts. *Cf. Perelle*, 514 A.2d at 561– 62 (finding no derogation of fiduciary duty where a non-discretionary broker failed to inform its client of the possibility of an extension of time to satisfy the broker's margin

9

call).

IV

In sum, we reject the Township's attempt to morph a meritless contractual dispute into a matter of fiduciary duty.  Because the Township has established no genuine dispute as to either its contract or tort claims, we will affirm the District Court's summary judgment.